# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2019

(Argued: December 11, 2019    Decided: September 17, 2020)

Docket No. 19-118

————————————————

PANJIVA, INC., A NEW YORK CORPORATION, TRADE DATA SERVICES, INC., DBA
IMPORTGENIUS, AN ARIZONA CORPORATION,
*Plaintiffs-Appellants,*

v.

UNITED STATES CUSTOMS AND BORDER PROTECTION, UNITED STATES DEPARTMENT
OF TREASURY,
*Defendants-Appellees.*

————————————————

Before:      SACK, PARKER, and CHIN, *Circuit Judges*.

Section 431 of the Smoot-Hawley Tariff Act of 1930 requires all "vessel[s]

arriving in the United States" to maintain a "manifest" on which is recorded

information about the just-completed voyage and an account of what is "on

board."  Pub. L. No. 71-361, § 431, 46 Stat. 590, 710 (1930).  An amendment passed

in 1984 requires the information contained in those manifests to "be available for

public disclosure."  Pub. L. No. 98-573, Title II, § 203, 98 Stat. 2948, 2974 (1984).  The

plaintiffs-appellants, Panjiva, Inc., and Trade Data Services, Inc., dba

ImportGenius, brought a lawsuit in the United States District Court for the Southern District of New York asserting, among other things, that section 431 requires aircraft entering the United States to make available for public disclosure such manifests detailing the journey and cargo aboard. The district court (J. Paul Oetken, *Judge*) agreed with the government that the statute requires only waterborne vessels — and not aircraft — to publicly disclose such information, and ultimately dismissed part of the plaintiffs-appellants' complaint. The plaintiffs-appellants appeal that dismissal. For essentially the reasons articulated by the district court, we agree with its conclusion. The judgment is therefore:

AFFIRMED.

> DAVID A. BAHR, Bahr Law Offices, P.C., Eugene, Oregon, *for Plaintiffs-Appellants;*
>
> STEPHEN CHA-KIM Assistant United States Attorney, (Christopher Connolly, *on the brief*), *for* Audrey Strauss, Acting United States Attorney for the Southern District of New York.

SACK, *Circuit Judge*:

## BACKGROUND

The Smoot-Hawley Tariff Act of 1930 is known principally for the tariffs it raised on imports to the United States and their alleged exacerbation of the Great Depression. *See* Robert Whaples, *Where Is There Economic Consensus Among*

*American Economic Historians? The Results of a Survey on Forty Propositions*, 55 J. Econ. Hist. 139, 151 (1995).  This appeal involves a lesser-known component of the Act — section 431 — which required all "vessel[s] arriving in the United States" to maintain a "manifest" on which is recorded information about the just-completed voyage and an account of what is "on board."  Pub. L. No. 71-361, § 431, 46 Stat. 590, 710 (1930).  Through a series of amendments over its long life, including one that apparently contained a drafting error and is the focus of the case at bar, section 431 has come to comprise, as the district court put it in its decision in this case, "an amalgamation of language from incompatible statutes."  *Panjiva, Inc. v. U.S. Customs & Border Prot.*, 342 F. Supp. 3d 481, 490 (S.D.N.Y. 2018).

The plaintiffs-appellants, Panjiva, Inc., a New York Corporation ("Panjiva"), and Trade Data Services, Inc., dba ImportGenius, an Arizona Corporation ("ImportGenius") (collectively the "plaintiffs") brought a lawsuit in the United States District Court for the Southern District of New York against the defendants-appellees, United States Customs and Border Protection ("CBP") and the United States Department of Treasury (collectively, the "government"), asserting, among other things, that somewhere within section 431's text is a requirement that aircraft entering the United States also make available for public disclosure specified

contents of manifests they have maintained detailing each journey and the cargo carried on that journey. The government disagreed, asserting that the statute requires that only waterborne vessels — and not aircraft — publicly disclose such information. The district court (J. Paul Oetken, *Judge*) agreed with the government and therefore dismissed the part of the plaintiffs-appellants' complaint at issue here. (The plaintiffs voluntarily dismissed the remainder of the complaint.) We agree with the government's interpretation of the statute largely for the reasons articulated by the district court. We therefore affirm its judgment.

### Statutory Background

In the spring of 1930, early in America's descent into the Great Depression, Congress enacted the Smoot-Hawley Tariff Act. In addition to the controversial tariffs, the Act imposed on imports to the United States, section 431 required "[t]he master of every vessel arriving in the United States" to "have on board his vessel a manifest" "contain[ing]" specified information concerning the vessel's voyage and cargo. Pub. L. No. 71-361, § 431, 46 Stat. at 710. The Act defined "vessel" as "includ[ing] every description of water craft or other contrivance used, or capable of being used, as a means of transportation *in water*, but . . . *not . . . aircraft*." *Id.*, § 401(a), 46 Stat. at 708 (emphasis added).

In 1984, fifty-four years after the statute was enacted, Congress passed a Trade and Tariff Act which, among other things, amended the Smoot-Hawley Act by adding a new subsection, (c)(1), to section 431.  Pub. L. No. 98-573, Title II, § 203, 98 Stat. 2948, 2949 (1984).  Paragraphs (A) through (G) of subsection (c)(1) specified "information [which], when contained in [the] manifest [required by the Smoot-Hawley Act], shall be available for public disclosure,"  *id.*, 98 Stat. at 2974:

> (A) The name and address of each importer or consignee and the name and address of the shipper to such importer or consignee, unless the importer or consignee has made a biennial certification, in accordance with procedures adopted by the Secretary of the Treasury, claiming confidential treatment of such information.
>
> (B) The general character of the cargo.
>
> (C) The number of packages and gross weight.
>
> (D) The name of the vessel or carrier.
>
> (E) The port of loading.
>
> (F) The port of discharge.
>
> (G) The country or origin of the shipment.

*Id.*

The subsection that followed, 431(c)(2), set forth exceptions that the Secretary of the Treasury could invoke to withhold from the public the information otherwise required to be disclosed by subsection (c)(1).  *Id.*

Congress again addressed section 431 some twelve years later, in July 1996. As part of the Anti-Counterfeiting Consumer Protection Act ("ACPA"), Congress amended subsection 431(c)(1) "by inserting the phrase 'vessel or aircraft' before 'manifest.'" Pub. L. No. 104-153, § 11(1), 110 Stat. 1386, 1389 (July 2, 1996). As of early July 1996, therefore, the clause of subsection 431(c)(1) requiring public disclosure of information contained in manifests provided that certain specified "information, when contained in [the] vessel *or aircraft* manifest [required to be kept by the master], shall be available for public disclosure." *See id.*, 110 Stat. at 1389 (emphasis added).

The ACPA also amended section 431(c)(1)(D), (E), and (F), quoted above, requiring that the information to be made available for public disclosure include not only "the name of the vessel or carrier," but "the name of the vessel, *aircraft*, or carrier"; and not only the "port" of loading or discharge, but the "*sea*port *or airport*" of loading and discharge. *See id.*, 110 Stat. at 1389 (emphases added).

Just three months later, in October 1996, though, Congress amended section 431(c)(1) again, this time in what it named the Miscellaneous Trade and Technical Corrections Act (the "Corrections Act"). Pub. L. No. 104-295, § 3(a)(3), 110 Stat. 3514, 3515 (October 11, 1996). In a subsection entitled "Manifests," the Corrections

Act provided that the operative clause of subsection 431(c)(1) was to be "amended . . . by striking 'such manifest' and inserting 'a vessel manifest.'" *Id.*, 110 Stat. at 3515. The Corrections Act did not amend paragraphs (c)(1)(A) through (G). The references to "aircraft" and "airport" remain. Congress has not amended any portion of section 431(c)(1) since.

The Corrections Act contained an obvious mistake: For three months and several days following July 2, 1996, the clause of section 431(c)(1) requiring public disclosure did not contain the phrase "such manifest." Rather, it stated, as noted above, that "information, when contained in *such vessel or aircraft manifest*, shall be available for public disclosure." *See* Pub. L. No. 104-153, § 11(1), 110 Stat. at 1389 (emphasis added). The phrase "such manifest," therefore, was not there to be "stri[cken]," as the Corrections Act purported to require.

Applying the law thus presents a challenge: It is not apparent what the statute in its current incarnation says.

The House of Representatives' Office of Law Revision Council engages in drafting the provision of the U.S. Code corresponding to enacted statutes.[1] In editing 19 U.S.C. § 1431(c)(1) — the provision of the U.S. Code that corresponds to

---

[1] How regularly it does so is not clear from the record.

section 431(c)(1) of the Smoot-Hawley Act — in an effort to reflect the changes effected by the Corrections Act, it added a new subsection (c)(1), to section 431. The relevant part of 19 U.S.C. § 1431(c)(1) read (as it continues to read today): "Except as provided in subparagraph (2), the following information, when contained in a *vessel vessel* or aircraft manifest, shall be available for public disclosure." 19 U.S.C. § 1431(c)(1) (emphasis added). The Code includes a footnote concerning the repeated use of the word "vessel": "So in original." 19 U.S.C. § 1431 n.1.

### *Factual Background*

Plaintiffs are businesses that seek to service the "global trade community" by "aggregat[ing]" and analyzing "data," "including customs data," from the United States. Joint Appendix ("JA") at 10, 12.

As discussed above, pursuant to section 431 of the Smoot-Hawley Tariff Act, presently codified at 19 U.S.C. § 1431, "Every vessel required to make entry [into the United States] shall have a manifest that complies with the requirements prescribed under subsection (d) [of the statute]." 19 U.S.C. § 1431(a). Subsection (c) of section 1431 requires that some of that information "shall be available for public disclosure." 19 U.S.C. § 1431(c). Subsection (d) sets forth regulations

governing such manifests and their treatment, including the role to be played by the Secretary of the Treasury and the "Customs Service." 19 U.S.C. § 1431(d).

The plaintiffs wish to use, for business purposes, information that is contained in the manifests of aircraft entering the United States. To that end, in January 2015, ImportGenius submitted a request to CBP under the Freedom of Information Act ("FOIA") that sought "access to and copies of the portions of ALL aircraft manifests for inbound shipments f[ro]m January 1, 2014 to July 31, 2014 that have been designated for public disclosure by 19 U.S.C. § 1431(c)." JA at 17. In October 2016, CBP denied the request. ImportGenius appealed CBP's denial in December 2016; CBP denied the appeal in September 2017.

In January 2017, Panjiva submitted a similar FOIA request to CBP seeking "access to and copies of the portions of ALL aircraft manifests for inbound shipments from December 5, 2016 to December 9, 2016 that have been designated for public disclosure by 19 U.S.C. § 1431(c)." JA at 21.

### *Procedural History*

On October 26, 2017, before CBP responded to Panjiva's FOIA request, the plaintiffs filed an action against the government in the United States District Court for the Southern District of New York. The complaint contained eight "counts":

Counts one through five alleged that the government had failed to comply with various requirements of FOIA; counts five[2] and eight alleged that the government's lack of FOIA compliance also violated the Administrative Procedure Act ("APA"); and counts six and seven alleged in essence that the government had violated the Smoot-Hawley Tariff Act of 1930 and the APA by failing upon request to disclose information from aircraft manifests and by failing to promulgate regulations to facilitate public access to aircraft manifest information.

On January 12, 2018, the government filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint's Smoot-Hawley Tariff Act (counts 6 and 7) and APA/FOIA (counts 5 and 8) claims. On September 24, 2018, the district court granted the motion.

The court's opinion began by addressing the Smoot-Hawley Tariff Act claims. *See Panjiva*, 342 F. Supp. 3d at 486-94. Those claims, the parties agree, turned on a pure — if challenging — question of statutory interpretation: whether section 431(c)(1) of the act requires public disclosure of water-vessel manifests only (that is, disclosure of manifests maintained by water craft entering the country only) or of aircraft manifests too. The court concluded that only

---

[2] Count Five contained an allegation under FOIA and an allegation under the APA.

information with respect to water-vessel manifests is covered. It therefore dismissed counts six and seven of the complaint.

The court then addressed the complaint's APA/FOIA claims, *see Panjiva*, 342 F. Supp. 3d at 494-96, concluding that they were duplicative of the Smoot-Hawley Tariff Act claims and therefore should be dismissed too.

On November 13, 2018, the plaintiffs voluntarily dismissed the complaint's remaining FOIA claims. This appeal followed.

## DISCUSSION

On appeal, the plaintiffs raise a single argument: that the district court adopted an incorrect interpretation of section 431(c)(1) of the Smoot-Hawley Tariff Act by failing to recognize that it now requires public disclosure of information in aircraft manifests, and therefore erred in its dismissal of the plaintiffs' claims brought under that statute.

### *Analysis*

"We review a district court's grant of a motion to dismiss under Rule 12(b)(6) *de novo*." *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019).

"When interpreting the meaning of a statute," in this case, the Smoot-Hawley Tariff Act, "the starting point of inquiry is of course the language of the

statute itself." *In re Edelman*, 295 F.3d 171, 177 (2d Cir. 2002). "If the statutory

terms are unambiguous, we construe the statute according to the plain meaning

of its words." *Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013). In other

words, "[i]f the meaning is plain, the inquiry ends there." *United States v.

Rowland*, 826 F.3d 100, 108 (2d Cir. 2016). "If, however, the terms are ambiguous

or unclear, we may consider legislative history and other tools of statutory

interpretation." *Nwozuzu*, 726 F.3d at 327.

> 1.  *Ambiguity*

The government and the plaintiffs disagree at the threshold as to whether

section 431(c)(1)'s language is unambiguous. The government contends that the

provision's language is ambiguous and tells us that we can and therefore should

look to other "tools," including the statute's legislative history, to interpret it. The

plaintiffs assert to the contrary that the provision's text is clear and express, and

that it therefore would be "inappropriate" for us to "resort to collateral

interpretive tools such as legislative history." Pls. Br. at 11.

Determining the clarity of section 431(c)(1)'s text plainly requires us to first

determine what the text of section 431(c)(1) is. Although determining the text of a

statute is usually a matter of routine, in the case at bar, it presents a substantial challenge.

As discussed above, the relevant provision was clear throughout most of the long life of the Smoot-Hawley Tariff Act. As enacted in 1930, section 431 provided that "every vessel," which the statute defined to include all "water craft" and "not . . . aircraft," Pub. L. No. 71-361, § 401(a), 46 Stat. at 708 (1930), that "arriv[ed] in the United States" was required to "have on board . . . a manifest" containing information specified in the statute. *Id.*, § 431, 46 Stat. at 710.

In 1984, Congress added a subsection, (c)(1), to section 431 that required statutorily enumerated "information . . . contained in such manifest" to be made "available for public disclosure . . ." Pub. L. No. 98-573, § 203, 98 Stat. at 2974 (1984). So far so good: Section 431 required all vessels (water craft) entering the United States to maintain a manifest, and section 431(c)(1) required specific information to be both included in "such" manifests and made "available for public disclosure."

In 1996, the combination of two amendments to the statute muddied the statutory waters.

To repeat, first, in July of that year, Congress passed the ACPA, which amended section 431(c)(1) "by inserting 'vessel or aircraft' before 'manifest.'" Pub. L. No 104-153, § 11(1), 110 Stat. at 1389 (July 2, 1996).[3]  As of that point, the clause of section 431(c)(1) covering public disclosure read:

> Except as provided in subparagraph (2), the following information, when contained in such vessel or aircraft manifest, shall be available for public disclosure.

*See id.*, 110 Stat. at 1389.  The list of each type of information to be disclosed followed, including the reference to "the name of the vessel, *aircraft*, or carrier," and the "*sea*port *or airport*" of loading and discharge.  *See id.*, 110 Stat. at 1389 (emphasis added).

About three months later, in October 1996, Congress enacted the Corrections Act, which amended section 431(c)(1) yet again.  *See* Pub. L. No. 104-295, § 3(a)(3), 110 Stat. at 3515 (October 11, 1996).  In relevant part, the Corrections Act provided that "Section 431(c)(1) of the Tariff Act . . . is amended . . . by striking 'such manifest' and inserting 'a vessel manifest.'"  *Id.*, 110 Stat. at 3515.

---

[3] As described more fully above, the ACPA also amended the list of information that must be contained in a manifest to include references to "airports" and "aircraft."  Pub. L. No. 104-153, § 11(2)-(4), 110 Stat. at 1389.

The problem, though, is that the phrase "such manifest" no longer appeared in section 431(c)(1), because the ACPA had replaced "such manifest" with "such vessel or aircraft manifest."  It could not simply be amended.  If one were to try to do what the statute seems to require — that is, if one were to remove the two words "such" and "manifest" separately — the language that remained would describe "information, when contained in . . . vessel or aircraft . . . ."  This reading makes no sense, let alone results in statutory text that is "clear."

Other subsections of section 431 manage, if anything, to add to the lack of clarity.  Congress has never changed section 431's core instruction that it is only "vessel[s]" — which are explicitly defined as "not includ[ing] aircraft" — that must "have . . . manifest[s]" when entering the United States.  46 Stat. at 708, 710.  To this day, the corresponding section of the U.S. Code, 19 U.S.C. § 1431(a), continues to read:  "Every vessel required to make entry . . . shall have a manifest that complies with [the statutory requirements]."  The definition of "vessel" contained in the "definitions" section of the Tariff Act, 19 U.S.C. § 1401, also states that "[t]he word 'vessel' includes every description of water craft or other contrivance used, or capable of being used, as a means of transportation in water,

but *does not include aircraft*." (emphasis added). Thus, aside from the question of

whether section 431(c)(1) requires the *public disclosure* of "aircraft manifests," it is

not even clear whether section 431 requires aircraft to possess and maintain

manifests in the first place. We think, therefore, that because we are permitted to

"consider . . . other tools of statutory interpretation" when attempting to

understand "terms" that are merely "ambiguous [and] unclear," *Nowzuzu*, 726

F.3d at 327, so too can we use those tools in odd circumstances such as these, to

attempt to determine what the text of section 431(c)(1) now says, and then what

those words mean.

### 2.    *Tools of Statutory Interpretation*

#### a.    *Canon Against Superfluity*

In addition to their argument that our analysis ought go no further than a

plain reading of section 431's text, the plaintiffs also appear to assert that if we do

go beyond the statute's plain meaning, their interpretation of the statute is aided

by the so-called "canon against superfluity," *see Microsoft Corp. v. i4i Ltd. P'ship*, 564

U.S. 91, 106 (2011), also known as the "canon against surplusage," *see, e.g., Marx v.

Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013). It has been referred to as "a cardinal

principle of statutory construction" which requires courts to "give effect, if

possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (internal quotation marks omitted).

The plaintiffs rely on the canon to attack the government's interpretation of section 431, which, as described above, reads the statute as requiring only waterborne vessels — and not aircraft — to publicly disclose information maintained in their manifests. The plaintiffs' contention is straightforward: The government's interpretation of section 431 fails to "give effect" to words in both (1) the provision's clause requiring public disclosure and (2) paragraphs (D), (E), and (F) of the provision, which identify the specific types of information in manifests that must be publicly disclosed.

The plaintiffs assert first that the government's interpretation of section 431(c)(1)'s operative clause fails to give effect to the term "aircraft manifest," which was added to the clause by the ACPA; the term "aircraft manifest," the plaintiffs argue, is thereby rendered surplusage and thus the government's reading violates the canon. As the district court recognized, though, this argument relies on the plaintiffs' assumption that after the ACPA was enacted, the Corrections Act "did not remove" the term "aircraft manifest" from section 431(c)(1), Pls. Br. at 16, thereby leaving it in section 431(c)(1) as surplus. But whether the Corrections Act

removed the allegedly surplus term "aircraft manifest" from the text of section 431(c)(1) is, as the district court put it, the "fundamental question" before us. *Panjiva*, 342 F. Supp. 3d at 490. In other words, the Corrections Act's effect on section 431(c)(1) is precisely what we must determine in order to resolve the issue of "what the text [of]" section 431(c)(1) now says and means. *Id*. Thus, because the plaintiffs assume the answer to this question, and because we on our own see little reason why the Corrections Act should be assumed not to have removed "aircraft manifest" from section 431(c)(1), the plaintiffs' contention is not persuasive.[4]

The plaintiffs' second attack on the government's interpretation is that it does not give effect to the references to "airports" and "aircraft" in paragraphs (D), (E), and (F) of the subsection as amended by the ACPA. Quoted above, they continue to require manifests to contain:

> (D) The name of the vessel, *aircraft*, or carrier.
> (E) The seaport *or airport* of loading. [and]

---

[4] The plaintiffs attempt to support their argument by pointing to a decision by the United States District Court for the District of Minnesota, *Grupo Petrotemex, S.A. De C.V. v. Polymetrix AG*, No. 16-cv-2401, 2018 WL 5307823 (D. Minn. Oct. 26, 2018), which, contrary to the district court in this case, concluded that the reading of section 431 proposed by the government essentially ignores the "plain language" of the provision that requires public disclosure of information in "aircraft manifests," *id.* at *6 n.6. We are of course not bound by that decision; but in any event we disagree with its conclusion because, like the plaintiffs' argument here, it is based on an assumption as to what effect the Corrections Act had on the text of section 431(c)(1).

      (F) The seaport *or airport* of discharge.

19 U.S.C. §§ 1431(c)(1)(D), (E), (F). (emphases added).

      This assertion, unlike the plaintiffs' first contention, assumes nothing about the effect of the Corrections Act. The Corrections Act did not address subparagraphs (D), (E), and (F) of section 431(c)(1), and it is thus indisputable that the text of those paragraphs continues to refer to airports and aircraft. The plaintiffs are thus correct insofar as the government's interpretation of section 431(c)(1) renders the airport and aircraft references superfluous — if aircraft are not covered by section 431(c)(1), for example, what is the word "aircraft" doing in paragraph (E) as a covered place of loading?

      The Supreme Court has made clear, though, that "[t]he canon against surplusage is not an absolute rule," *Marx*, 568 U.S. at 385, and it "assists only where a competing interpretation gives effect 'to every clause and word of a statute.'" *Microsoft Corp.*, 564 U.S. at 106 (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). And however powerful this attack against the government's interpretation of the provision may be, it cannot aid the plaintiffs' contrary reading of section 431(c)(1) inasmuch as the plaintiffs do not even tell us what the words of section 431(c)(1) *are* post-Corrections Act, let alone give effect to every one of them. The closest the

plaintiffs come to offering a suggestion as to how section 431(c)(1)'s text now reads is by quoting 19 U.S.C. § 1431(c)(1), which, as we have noted, the House Office of Law Revision Council decided was: "the following information, when contained in a *vessel vessel* or *aircraft* manifest, shall be available for public disclosure." (emphasis added). Thus, although they attempt to dismiss it as "a minor syntactical issue," Pls. Br. at 6, the plaintiffs' understanding of the text of section 431(c)(1) to contain the phrase "vessel vessel" makes it obvious that their reading of the statute also contains a superfluous term.

In addition, the plaintiffs' interpretation of section 431(c)(1) fails to give effect to *any* clause or word in the Corrections Act amendment because their interpretation of section 431(c)(1) is only possible if the Corrections Act is understood to have had no effect on section 431(c)(1) at all. In other words, the parties agree that in the period after Congress enacted the ACPA in July 1996 and before it enacted the Corrections Act in October 1996, section 431(c)(1) explicitly required the government to publicly disclose manifests of both vessels and aircraft.[5] Because the plaintiffs thus understand section 431(c)(1) to continue to

---

[5] This assumes that section 431 requires an aircraft entering the country to have a manifest in the first place, which, as discussed above, is itself not clear.

impose the same requirements as it did before the Corrections Act was enacted, as the district court observed, their interpretation "render[s] the Corrections Act amendment entirely superfluous." *Panjiva*, 342 F. Supp. 3d at 491.

We conclude, therefore, that the canon against surplusage offers little to our analysis: Both the plaintiffs' interpretation and the government's interpretation of section 431(c)(1) leave different portions of the statute without effect. We must therefore turn to other tools of statutory interpretation in our analysis.

> **b.** *Implied Repeal*

The plaintiffs argue also that their interpretation of section 431(c)(1), which, to reiterate, requires public disclosure of manifests maintained by both vessel and aircraft manifests, is superior to the government's interpretation, which requires public disclosure of vessel manifests only, because the government's interpretation runs counter to the rule against implied repeals.

The Supreme Court has instructed that "repeals [of statutes] by implication are strongly disfavored" and that "it can be strongly presumed that Congress will specifically address language on the statute books that it wishes to change." *United States v. Fausto*, 484 U.S. 439, 452-53 (1988). According to the plaintiffs, the government's interpretation of section 431(c)(1) runs counter to this presumption

inasmuch as its understanding of the statute treats the Corrections Act as having

deleted the phrase "aircraft manifests" from section 431(c)(1), and thus having

repealed the portion of the ACPA that introduced that phrase into section

431(c)(1) several months previously, by silent implication.

To be sure, the government's interpretation of section 431(c)(1) does treat

the Corrections Act as having removed the word "aircraft" from section

431(c)(1)'s operative clause.  It is also true that the government asserts that the

Corrections Act did so without specifically addressing the term "aircraft."  But it

does not follow that the government's interpretation relies on understanding the

Corrections Act to have repealed the relevant portion of the ACPA by

implication.  Instead, the government's view of section 431(c)(1) treats the

Corrections Act not as having overlooked the phrase "aircraft manifests," or as

having silently repealed the relevant portion of the ACPA, but instead as having

attempted to remove the word "aircraft" from section 431(c)(1)'s operative clause

explicitly, if sloppily.  In other words, under the government's reading, the

Corrections Act is "an affirmative showing of [Congress'] intention to repeal,"

*Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 145 (2d Cir. 2002), a specific

provision (the ACPA) through an equally specific amendment (the Corrections

Act) that continues to suffer from a drafting error. Therefore, because the

government does not contend that that Corrections Act repealed the ACPA by

implication, the presumption against implied repeals does not apply and thus

favors neither the plaintiffs' nor the government's interpretation of section

431(c)(1).

### c. *Legislative History*

Having been pointed to nothing better to aid our interpretation, and with

the meaning of section 431(c)(1)'s text still uncertain, we turn to the provision's

legislative history. *See Puello v. Bureau of Citizenship & Immigration Servs.*, 511

F.3d 324, 327 (2d Cir. 2007) ("If the meaning of a statute is ambiguous, the court

may resort to legislative history to determine the statute's meaning.") "[I]n so

doing, we must 'construct an interpretation that comports with [the statute's]

primary purpose and does not lead to anomalous or unreasonable results.'" *Id.*

(quoting *Conn. ex rel. Blumenthal v. U.S. Dep't of the Interior*, 228 F.3d 82, 89 (2d

Cir. 2000)).

The plaintiffs, as noted above, urge us to ignore the statute's legislative history based on their view that the text of section 431(c)(1) is clear and resort to legislative history therefore improper.[6]

The government disagrees, identifying legislative history that it contends helps make sense of section 431(c)(1)'s ambiguous text. It cites a report on the Corrections Act by the Senate Finance Committee that states that the act "amends section 431(c)(1) of the Tariff Act of 1930 to clarify that the references in the section is to vessel manifests and not to other types of manifests." S. Rep. No. 104-393, at 3 (1996). The report also includes a graphical representation of the changes the committee intended the Corrections Act to make to section 431, with the words to be removed indicated in brackets:

---

[6] Before the district court, but not on appeal, the plaintiffs argued that their reading of section 431(c)(1) was bolstered by a report by the Senate Judiciary Committee that expressly states the ACPA "amends section 431(c)(1) of the Tariff Act to permit public disclosure of aircraft manifests under the same terms currently allowed for sea shipments" because the "distinction between information required about goods shipped by sea as compared to goods shipped by air" is "unwarranted and out-of-date." S. Rep. No. 104-177, at 11 (1995). Be that as it may, the report provides little more than what is offered by the text of the ACPA, which, by inserting "vessel or aircraft before manifest" in section 431(c)(1), makes it clear that Congress intended (at least for a short period of time) that section 431(c)(1) require the disclosure of aircraft manifests in addition to vessel manifests. This point does not appear to be disputed by the government. But crucially, the report leaves unanswered what the text of section 431(c)(1) should be read to mean post enactment of the Corrections Act.

**Part II—Report, Entry, and Unlading of Vessels and Vehicles**

\* \* \* \* \* \* \*

SEC. 431. MANIFEST—REQUIREMENT, FORM, AND CONTENTS.
  (a) \* \* \*

\* \* \* \* \* \* \*

  (c)(1) Except as provided in subparagraph (2), the following information, when contained in [such manifest], *a vessel manifest* shall be available to public disclosure:

\* \* \* \* \* \* \*

*Id.* at 43.  We agree with the district court that this report is "clear evidence that the Corrections Act amendment was enacted to restrict the scope of § 431(c)(1)" by limiting it to vessels, which means waterborne transport only, and that the committee "understood that the version of § 431(c)(1) that would exist after [the Corrections Act] would cover [such] vessel manifests only, and that [the Corrections Act] would omit any reference to aircraft manifests from the operative clause of § 431(c)(1)." *Panjiva*, 342 F. Supp. 3d at 492.

One might wonder why Congress changed its mind so dramatically and so quickly between July and October of 1996.  If the distinction between vessel and aircraft manifests was "unwarranted and out-of-date," S. Rep. No. 104-177, at 11 (1995), when the ACPA was passed in July 1996, one might guess that it would also be "unwarranted and out-of-date" three months later when the Corrections Act was passed.  But Congress is permitted a U-turn.  This legislative history suggests that it took one.  And, critically, this reading allows for both 1996 amendments (*i.e.*, the ACPA and the Corrections Act) to carry meaning:

25

Congress intended the ACPA to add aircraft manifests to section 431(c)(1)'s

public disclosure requirement, and (soon thereafter) intended the Corrections

Act to remove aircraft manifests from the public disclosure requirement.

Moreover, if, as all appear to agree, the ACPA was meant to expand

section 431(c)(1) to require the public disclosure of both vessel and aircraft

manifests, and, as the plaintiffs contend, section 431(c)(1) should be understood

to continue that requirement, then the Corrections Act was essentially a nullity.

Congress should not be understood to have intended an amendment to be

ineffective.  Faced with two less than perfect readings of the statute, we conclude

that the government's interpretation of section 431(c)(1) more persuasively

reflects Congressional intent.[7]

---

[7] The government also relies on "subsequent legislative history," *i.e.*, legislative history from the time since the Corrections Act was passed, to support its interpretation of section 431(c)(1).  The argument is discussed at some length in the district court's opinion.  *See Panjiva*, 342 F. Supp. 3d at 493-94.  But the Supreme Court has warned (as the district court noted, *see id.*) that subsequent legislative history is "a particularly dangerous ground on which to rest an interpretation of a prior statute," inasmuch as "[a] bill can be proposed for any number of reasons, and it can be rejected for just as many others."  *Solid Waste Agency of N. Cook Cty. v. Army Corps of Eng'rs*, 531 U.S. 159, 169-70 (2001) (internal quotation marks omitted). The district court concluded that subsequent legislative history "further supports the [g]overnment's reading of the statute." *Panjiva*, 342 F. Supp. 3d at 492.  Under the circumstances, though, we need not and therefore do not rely on subsequent legislative history to reach our conclusion.

19-118
*Panjiva, Inc. v. United States Customs and Border Protection*

For the foregoing reasons, we conclude that section 431(c)(1) of the Smoot-Hawley Tariff Act of 1930, presently codified at 19 U.S.C. § 1431(c)(1), continues to require the government to make available for public disclosure manifests only of vessels, meaning "water craft or other contrivance used, or capable of being used, as a means of transportation in water, but . . . not . . . aircraft." *See* 19 U.S.C. § 1401.

## CONCLUSION

We have considered the plaintiffs' remaining arguments on appeal and conclude that they are without merit. We therefore AFFIRM the judgment of the district court.